IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| 130 E. DEVON, LLC, an Illinois Limited Liability Company, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 22 C 2184<br>)<br>)<br>) |
| The Village of Elk Grove, Illinois, and Illinois Municipality | )<br>)<br>) |
| Defendant. | |

Memorandum Opinion and Order

In this action, 130 E. Devon, LLC, an entity that owns the title to a vacant lot located at 130-132 & 136 E. Devon Avenue, Elk Grove Village, Illinois ("Devon"), claims that the Village of Elk Grove violated the Fifth Amendment's Takings Clause in August of 2021, when it forcibly annexed the lot, automatically zoned it as R-3 Residential District pursuant to the Village's Zoning Code, and refused to grant Devon a special use permit that would have enabled it to sell the lot to a developer for use as a truck and trailer parking facility. The Village moves to dismiss the complaint, arguing that Devon's allegations do not raise a plausible takings claim under *Penn Central Transportation Co. v.*

*City of New York*, 438 U.S. 104 (1978), the Supreme Court's seminal regulatory takings case. For the reasons below, I grant the motion.

I.

According to the complaint, Devon acquired the property in question in 2011, "with the expectation of developing and/or selling the [it] to a developer for profit." Compl. at ¶¶ 7-10. At that time, the lot was located in unincorporated Cook County. Devon's predecessor had requested in 2007 that the Village voluntarily annex the property for the development of a multi-family residence, but the Village declined to do so.

By July of 2021, Devon was allegedly engaged in "advanced negotiations" for a "Parking Facility Contract" to sell the lot to a buyer who planned to operate it as a truck and tractor parking facility. But in August of 2021, the Village notified Devon that it intended to forcibly annex the lot pursuant to 65 ILCS 5/7-1-13, which provides:

> (a) Whenever any unincorporated territory containing 60 acres or less, is wholly bounded by (a) one or more municipalities... that territory may be annexed by any municipality by which it is bounded in whole or in part, by the passage of an ordinance to that effect after notice is given as provided in subsection (b) of this Section. ...

65 ILCS 5/7-1-13. Devon sent the Village a cease-and-desist letter on September 8, 2021, demanding that the Village take no action to annex the property. The Village ignored the letter, however, and passed an ordinance on September 14, 2021, annexing the lot. As a

result of these actions, coupled with the Village's refusal to grant a special use permit to operate a truck and trailer parking lot in the residential district to which Devon's property is now zoned, Devon has not been able to consummate the Parking Facility Contract or to receive the $5.4 million purchase price it expected under that contract.

II.

The complaint asserts one count for relief, captioned "Regulatory Taking," which claims that because Devon is "no longer able to enter into the Parking Facility Contract or pursue other economically viable commercial uses for the Subject Property," it is entitled to "just compensation" under the Fifth and Fourteenth Amendments. Defendant seeks dismissal of the complaint under Fed. R. Civ. P. 12(b)(6), so I take all of Devon's factual allegations as true, though I need not accept its legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint withstands dismissal if Devon's claim is facially plausible, meaning that the complaint alleges factual content sufficient to raise the reasonable inference that the Village is liable for the violation alleged. *Iqbal*, 556 U.S. at 678.

The Fifth Amendment, as applied to the States through the Fourteenth Amendment, prevents the government from taking property for public use without just compensation. U.S. Const. amend. V, XIV. While the "paradigmatic taking" involves "a direct government

result of these actions, coupled with the Village's refusal to grant a special use permit to operate a truck and trailer parking lot in the residential district to which Devon's property is now zoned, Devon has not been able to consummate the Parking Facility Contract or to receive the $5.4 million purchase price it expected under that contract.

II.

The complaint asserts one count for relief, captioned "Regulatory Taking," which claims that because Devon is "no longer able to enter into the Parking Facility Contract or pursue other economically viable commercial uses for the Subject Property," it is entitled to "just compensation" under the Fifth and Fourteenth Amendments. Defendant seeks dismissal of the complaint under Fed. R. Civ. P. 12(b)(6), so I take all of Devon's factual allegations as true, though I need not accept its legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint withstands dismissal if Devon's claim is facially plausible, meaning that the complaint alleges factual content sufficient to raise the reasonable inference that the Village is liable for the violation alleged. *Iqbal*, 556 U.S. at 678.

The Fifth Amendment, as applied to the States through the Fourteenth Amendment, prevents the government from taking property for public use without just compensation. U.S. Const. amend. V, XIV. While the "paradigmatic taking" involves "a direct government

appropriation or physical invasion of private property," the Supreme Court has recognized that "government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). To determine whether a government regulation amounts to a taking, courts analyze "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017) (citing, *inter alia*, *Penn Central*, 438 U.S. at 124).

Establishing a regulatory taking "is a tall order. Not every regulation that decreases property value qualifies for compensation."). *Kennett Truck Stop v. Weiss*, 2022 U.S. Dist. LEXIS 127625, *9 (S.D. Ind., July 19, 2022). Indeed, "government regulation—by definition—involves the adjustment of rights for the public good. Often this adjustment curtails some potential for the use or economic exploitation of private property." *Andrus v. Allard*, 444 U.S. 51, 65 (1979). Accordingly, the Supreme Court has long held that a "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking" on its own. *Concrete Pipe & Prods. v. Construction Laborers Pension Trust*, 508

4

U.S. 602, 645 (1993) (citing cases). Courts use the flexible, *Penn Central* framework as a means "to reconcile two competing objectives central to regulatory takings doctrine: the individual's right to retain the interests and exercise the freedoms at the core of private property ownership...and the government's power to 'adjus[t] rights for the public good.'" *Murr* 137 S. Ct. at 1937 (2017) (quoting *Andrus*, 444 U.S. 51 at 65).

Analysis of the first *Penn Central* factor "requires us to compare the value that has been taken from the property with the value that remains in the property." *Home Builders Ass'n of Greater Chicago v. City of Chicago*, 213 F. Supp. 3d 1019, 1029 (N.D. Ill. 2016) (quoting *Keystone Bituminous Coal Assn. v. DeBenedictis*, 480 U.S. 470, 497 (1987)). Accordingly, "it is inappropriate to consider only the loss due to prohibited uses, without also considering the many profitable uses to which the property could still be put." *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1074 (7th Cir. 2013). Here, Devon does not attempt to quantify the value of the lot in light of the Village's annexation and zoning, making this sort of comparative assessment impossible. Moreover, Devon acknowledges that the lot can be developed consistently with the Village's zoning ordinance into "a state licensed family community residence or a single-family home." Resp., ECF 38 at 7. Although Devon states in a conclusory fashion that these uses are "not economically viable," *id.*, it has not alleged plausibly that

5

its remaining options are so minimal as to effectively extinguish its proprietary rights.

As for the second *Penn Central* factor—the extent to which the zoning regulations interfere with reasonable investment-backed expectations—Devon points to the Parking Facility Contract and argues that the Village's refusal to annex the lot in 2007 led it reasonably to expect that the lot would remain in unincorporated Cook County and could be developed unencumbered by Village zoning regulations. But "when buying a piece of property, one cannot reasonably expect that property to be free of government regulation such as zoning[.]" *Rancho De Calistoga v. City of Calistoga*, 800 F.3d 1083, 1091 (9th Cir. 2015). Moreover, although Devon acquired the property in 2011, it does not claim to have improved the lot or taken steps to develop it for any purpose in the ensuing decade. In other words, it is not as though Devon claims to have incurred significant costs or invested substantial resources to develop or market the property for a particular use, only to have the Village turn around and prohibit that use unexpectedly. On the facts alleged here, the second *Penn Central* factor does not support plaintiff.

Finally, the Village's exercise of its statutory authority to annex the lot and its imposition of zoning regulations are garden-variety measures of the kind municipalities routinely take to "promote the common good" of their communities. *Penn Central*, 438

6

U.S. at 124. Devon argues that the Village annexed the lot "to purposely defeat" its plans to sell the property to a developer to build a truck and trailer parking lot. Just so. The very purpose of zoning restrictions is to regulate the kinds of activities that can be conducted in certain areas, and municipalities enjoy "substantial leeway" when it comes to zoning regulations. *Anjum v. City of Chicago*, No. 1:21-CV-00205, 2022 WL 874623, at *8 (N.D. Ill. Mar. 24, 2022). Devon insists that the Village's intent is relevant to whether its action amounts to a taking; but even if that is correct, nothing in the complaint suggests that the Village acted with nefarious intent. Without more, there is simply nothing unusual about the Village's determination that truck and trailer parking is an undesirable development plan for a vacant lot in a residential zone.

### III.

For the foregoing reasons, defendant's motion to dismiss is granted.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: February 7, 2023